```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

PENNECOM B.V.,                          :

                Plaintiff,              :
                                              MEMORANDUM DECISION
        - against -                     :
                                              02 Civ. 5355 (DC)
MERRILL LYNCH & CO., INC.,              :
MERRILL LYNCH INTERNATIONAL, INC.,
and PAUL A. PITTMAN,                    :

                Defendants.             :

- - - - - - - - - - - - - - - - - -x
```

**APPEARANCES:** (See last page)

**CHIN, D.J.**

In this case, plaintiff PenneCom B.V. ("PenneCom") sues defendants Merrill Lynch & Co., Inc. ("MLC"), Merrill Lynch International, Inc. ("MLI"), and Paul A. Pittman for tortious conduct in connection with PenneCom's unsuccessful efforts to sell a subsidiary.  Defendants acted as investment bankers for the intended buyer.  They move to dismiss the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and Fed. R. Civ. P. 9(b) for failure to plead fraud with sufficient particularity.  For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

### I. Prior Proceedings

I assume familiarity with the background of this case and restate it here only briefly.  See PenneCom B.V. v. Merrill

Lynch & Co., 372 F.3d 488 (2d Cir. 2004), vacating No. 02 Civ. 5355 (DC), 2003 U.S. Dist. LEXIS 11229 (S.D.N.Y. July 1, 2003). In short, PenneCom entered into a share purchase agreement (the "SPA") in April 1999 to sell its wholly-owned subsidiary, Pilicka Telefonia S.A. ("Pilicka"), to Elektrim S.A. ("Elektrim"). The transaction did not close, and PenneCom commenced arbitration proceedings against Elektrim for breach of contract, seeking $100 million in damages. PenneCom prevailed, as the arbitration panel found that Elektrim had breached the SPA, but PenneCom was awarded only $38 million in damages. In July 2002 PenneCom commenced this action against defendants, Elektrim's investment bankers, asserting a claim of tortious interference with contract under Polish law. PenneCom sought $100 million in damages.

Defendants moved to dismiss the amended complaint on November 14, 2002. The case was reassigned to me in January 2003, and on June 30, 2003, I granted the motion to dismiss (the "June 2003 Memorandum Decision"), finding that New York law applied to the case and that PenneCom's claims were barred by the doctrine of collateral estoppel. I found that the arbitration panel had rejected the claim that PenneCom had been injured to any extent beyond the $38 million that PenneCom was awarded and that PenneCom could not be permitted to relitigate the extent of its damages by pursuing claims against defendants. In an order dated July 23, 2003, I denied PenneCom's Fed. R. Civ. P. 59(e) motion to alter or amend the judgment.

PenneCom appealed and on June 28, 2004, the Second Circuit vacated the judgment and remanded the case. PenneCom B.V., 372 F.3d at 488. The Second Circuit held that this Court erred in concluding that Norris v. Grosvenor Marketing Ltd., 803 F.2d 1281 (2d Cir. 1986), compelled dismissal on grounds of collateral estoppel. The Second Circuit held that "before the court invokes collateral estoppel to bar PenneCom from relitigating the extent of its loss resulting from Elektrim's breach, PenneCom must be allowed discovery to collect evidence which might support a finding either that PenneCom was not afforded a full and fair opportunity to prove its loss in the arbitration, or that Merrill Lynch should be precluded by its own (alleged) misconduct from asserting the equitable doctrine of collateral estoppel." 372 F.3d at 493.

In addition, the Second Circuit noted that a post-discovery determination that collateral estoppel bars PenneCom from relitigating the amount of its loss against defendants would not necessarily preclude punitive damages against them. 372 F.3d at 494-95. Although PenneCom's amended complaint had not demanded punitive damages, the Second Circuit concluded that PenneCom was not seeking to evade or relitigate any matter previously decided by the arbitrators because defendants were not parties to the arbitration and the arbitration did not consider whether defendants were liable for punitive damages. Id.

## II. The Second Amended Complaint

After remand, PenneCom filed a Second Amended Complaint on November 5, 2004. In the Second Amended Complaint, PenneCom asserts three tort claims under Polish law and, in the alternative, two claims under Dutch law and, also in the alternative, claims of tortious interference with contractual relations and fraud under New York law. The facts alleged in the Second Amended Complaint, which are assumed to be true, are in some instances stated differently than they were in the amended complaint and I note those differences in this decision where relevant.

Defendants MLC and MLI moved to dismiss the Second Amended Complaint on December 13, 2004, arguing first that New York law governs the action and second, that PenneCom failed to state claims for tortious interference and fraud under New York law. Defendant Pittman also moved to dismiss the Second Amended Complaint, relying on the facts, legal authority, and argument set forth by MLC and MLI.

## DISCUSSION

### A. Choice of Law

In the June 2003 Memorandum Decision, I found that New York choice of law principles governed this case and I applied an "interest analysis" approach, which New York courts utilize "to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." Padula v.

Lilarn Props. Corp., 620 N.Y.S.2d 310, 311 (1994). I concluded that New York has more of an interest in having its law apply to the case than does Poland. See PenneCom B.V., 2003 U.S. Dist. LEXIS 11229, at *9-12. In the instant motion papers, the parties do not dispute that New York choice of law principles govern the case or that, in the event of a conflict of law, New York law requires the Court to apply an interest analysis approach. The parties disagree, however, as to whether there is a conflict of law among New York, Polish, and Dutch law and, if there is a conflict, which country has a greater interest in the litigation.

After consideration of the Second Amended Complaint and the parties' motion papers, I conclude that there is a conflict among Polish, Dutch, and New York law and that New York has more of an interest in having its law apply than does Poland or the Netherlands.

### 1. **Conflict of Laws**

First, I find that there is a conflict among the laws relied on in PenneCom's claims.

In making a determination regarding foreign law, a court may consider "any relevant material or source, including testimony." Fed. R. Civ. P. 44.1. PenneCom included with its opposition papers affidavits from Polish and Dutch legal experts that interpret the relevant Polish and Dutch tort statutes, citing to case law and treatises. If those interpretations are correct, the Polish and Dutch tort law relied on by PenneCom in its Second Amended Complaint differs substantively from New York

law.  (Compare, e.g., Nesterowicz Decl. ¶ 7(b)-(d) (explaining that under a provision of Polish law relied on by PenneCom, the slightest fault, intentional or unintentional, may result in liability) with Goodman Mfg. Co. v. Raytheon Co., No. 98 Civ. 2774 (LAP), 1999 U.S. Dist. LEXIS 13418, at *33 (under New York law, intent is a requirement of tortious interference with contract) and Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999) (intent to defraud is an element of fraud under New York law); Nesterowicz Decl. ¶ 18 (concluding that, under Polish law, an investment banking firm doing work for a client would not escape liability for torts that it commits while performing the work) and Van Dam Decl. ¶ 11 ("Dutch law does not recognize any exception from . . . liability based merely on the fact that the person engaging in the unlawful . . . conduct was serving as an 'agent'") with Solow v. Stone, 994 F. Supp. 2d 173, 181-82 (S.D.N.Y. 1998) (holding that an agent cannot "be held liable for inducing his principal to breach a contract so long as he is acting within the scope of his authority").

Defendants do not challenge PenneCom's interpretation of Polish and Dutch law, and I conclude that PenneCom has sufficiently alleged a conflict of laws.  I decline to make conclusions of law regarding the specific Polish and Dutch provisions under which PenneCom brought its claim, finding it unnecessary to the resolution of this action.  See 9 Charles A. Wright et al., Federal Practice & Procedure § 2444, at 648-49 (2d ed. 1995) (explaining that although Rule 44.1 obliges courts to

- 6 -

take an active role in the process of ascertaining foreign law, it does not require courts to research and determine foreign law).

Defendants challenge PenneCom's conflict of law analysis by arguing that because PenneCom raised in its pleadings two claims under New York law, alternative to the Polish and Dutch claims but based on the same facts, PenneCom has conceded that New York provides a remedy for its claims. As a result, according to defendants, PenneCom has conceded that there is no conflict of laws in relation to PenneCom's claims.

That conclusion is in error. A plaintiff is free to plead for relief in the alternative, and separate claims need not be consistent. See Fed. R. Civ. P. 8(a), (e)(2). Thus a plaintiff's decision to plead in the alternative is not an acknowledgment that all the legal theories are consistent or ultimately will provide an adequate remedy. Here, New York law may provide a remedy for PenneCom's claims, but it may not be the optimal remedy for PenneCom. In addition, at this stage of the litigation, PenneCom need only allege a claim upon which relief can be granted and, prior to discovery, it is not required to show that it will ultimately prevail. A conflict of law exists "[w]here the applicable law from each jurisdiction provides different substantive rules." Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998). The inclusion of Polish, Dutch, and New York claims in the Second Amended Complaint does not preclude PenneCom

from arguing that those laws are in conflict, and I hold that PenneCom has sufficiently alleged a conflict among the laws.

### 2. **Interest Analysis**

I now apply New York's interest analysis to determine which country has the greatest interest in having its law apply to this dispute. See White v. ABCO Eng'g Corp., 221 F.3d 293, 301 (2d Cir. 2000); Padula, 620 N.Y.S.2d at 311. The parties agree that in cases involving conduct-regulating laws, where the parties are domiciled in different jurisdictions, the law of the jurisdiction where the tort occurred will usually apply. Id. (See Pl.'s Opp'n at 13-14; Defs.' Mem. at 10). The jurisdiction in which a tort occurred "has the greatest interest in regulating behavior within its borders." Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 72 (1993).

As an initial matter, I find that the Netherlands does not have a significant interest in this litigation. The only contacts to the Netherlands alleged in the Second Amended Complaint are that PenneCom is a Dutch company and the payment under the SPA was to be made to a Dutch bank account. (Second Am. Compl. ¶¶ 5, 26). The case has no other connections to the Netherlands. In contrast to the allegations concerning New York and Poland, PenneCom does not allege that any of defendants' tortious conduct occurred in the Netherlands, only that one consequence of the conduct -- the failure of Elektrim to pay PenneCom -- was suffered there. Nor does PenneCom allege that there were any significant interactions between the parties in

the Netherlands.  As a result, the Netherlands has little connection to the case other than being the home of PenneCom, and thus I decline to apply Dutch law.  Significantly, both parties agree that the tortious conduct did not occur in the Netherlands, and neither party claims that the Netherlands has the greatest interest in the litigation.  (See, e.g., Pl.'s Opp'n at 14, 16-17; Defs.' Mem. at 12-13).  See In re Simon II Litigation, No. 00 Civ. 5332 (JBW), 2002 U.S. Dist. LEXIS 25632, at *240-41 (E.D.N.Y. Oct. 22, 2002) (explaining that in cases involving fraud and deceit, the law of the place where the injury occurred often governs but that criterion "gives way when it is at war with superior state interests").

Next I consider the contacts to New York and Poland.  In the June 2003 Memorandum Decision, I found that New York had a greater interest in the dispute than Poland because (1) MLC and MLI are New York companies and Pittman was employed by MLC and/or MLI, but no party was a citizen of Poland; (2) critical facts occurred in New York, including the negotiation and execution of the SPA and, because Elektrim's contractual obligations were to be paid in New York, PenneCom's loss of rights under the SPA;[1] (3) the key to the tortious interference with contract claim -- the breach of the SPA -- occurred in New York; and (4) PenneCom

---

[1] In the Amended Complaint, PenneCom alleged that "Elektrim failed to attend the closing . . . in New York and failed to pay the purchase price under the SPA due at that closing." (Am. Compl. ¶ 20).  PenneCom did not allege, as it did in the Second Amended Complaint, that the payment was due to be paid into a Dutch bank account.  (See Second Am. Compl. ¶ 20).

- 9 -

essentially had agreed in the arbitration proceedings that New York law governed contract issues as well as tort issues, including whether PenneCom had engaged in fraud.

The facts alleged in the Second Amended Complaint do not alter my finding that New York has a greater interest in this litigation than does Poland. First, as noted in the June 2003 Memorandum Decision, MLC and MLI are New York companies, and no party is a citizen of Poland. Pittman was not a citizen of either jurisdiction, but was employed by MLC and/or MLI and was in on-going communication with colleagues and superiors in New York. (Second Am. Compl. ¶¶ 5-8, 10). Where a defendant acts in numerous jurisdictions around the world, significant weight must be given to the jurisdiction in which it is based and, presumably, from which it exerts control over its employees.

Second, critical facts, as outlined in the June 2003 Memorandum Decision, occurred in New York. The SPA was negotiated in New York, and Pittman was extensively involved in the negotiations as the principal business representative for Elektrim in New York. (Id. ¶ 17). It is not clear where the SPA was executed, but the SPA provided that the closing would occur in New York. (Id. ¶¶ 17-18, 20). Elektrim breached the SPA by failing to attend the closing in New York and failing to make payment under the SPA. (Id. ¶ 26).

Third, PenneCom's allegations implicate the professionalism and integrity of New York businesses, MLC and MLI. The Second Amended Complaint alleges that Elektrim breached

its obligations under the SPA as a result of tortious conduct by defendants. (Id. ¶¶ 26, 28). Defendants' alleged conduct included advising Elektrim not to close on the SPA, breaching duties of care, and otherwise assisting Elektrim in causing injury to PenneCom. That alleged conduct touched numerous jurisdictions -- Pittman was previously a California resident who was stationed in London and spent time in Poland; the first meeting among the parties to the SPA occurred in Nebraska; due diligence occurred in Poland; and the arbitration (in which PenneCom alleges defendants falsely testified) was in London. Ultimately, however, New York has the greatest interest in regulating the behavior of New York defendants who allegedly acted dishonestly or improperly in relation to an agreement that is, essentially, a New York contract. Moreover, Elektrim and PenneCom agreed to rely on New York law in the SPA and during the arbitration, and thus New York has a strong interest in regulating alleged improper conduct related to those transactions. See Cooney, 81 N.Y.2d at 72 (explaining that interest analysis intends to give controlling effect to the law that has the greatest concern with the specific issue raised in litigation). PenneCom argues that the location of negotiation and execution of the SPA would only be relevant in a choice-of-law analysis if this were a breach of contract case. Although facts relating to the SPA are not dispositive, they are relevant to New York's interest in the case.

In support of the application of Polish law, PenneCom argues that defendants had an office in Poland where Pittman spent time, due diligence was performed on Pilicka in Poland, defendants allegedly advised Elektrim not to close on the SPA in meetings in Poland, and Elektrim wrote to PenneCom from Poland to tell PenneCom it would not close. (Id. ¶¶ 13, 22, 24-26). These additional facts are not sufficient to tip the balance in favor of applying Polish law. As held in the June 2003 Memorandum Decision, the location of due diligence is largely irrelevant; under PenneCom's theory, the due diligence was a sham. Communication between defendants and Elektrim in Poland leading up to the breach is not dispositive because similar activity occurred in New York and touched a number of jurisdictions. This was a multinational deal, but one with strong ties to New York, involving New York defendants' conduct in New York and abroad, leading to a breach in New York. Although there are some Polish contacts, New York has the greatest interest in the case. As a result, I apply New York law in the case.

Accordingly, the first, second, third, fourth, and fifth claims for relief in the Second Amended Complaint -- which seek to rely on Polish and Dutch law -- are dismissed.

**B.   Motion to Dismiss**

   **1.   Applicable Law**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the

complaint as true and draw all reasonable inferences in favor of the plaintiff. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). The issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claim. Id. Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Cooper v. Parky, 140 F.3d 433, 440 (2d Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

### 2. **Tortious Interference with Contractual Relations**

Under New York law, tortious interference with contractual relations requires proof of four elements: (1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff. Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993) (citations omitted).

Here, PenneCom clearly alleges the first, second, and fourth elements of the cause of action. The SPA was a contract between PenneCom and Elektrim, defendants were aware of the SPA, and PenneCom suffered injury when Elektrim breached. The third element, however, presents a much closer question. In addition, defendants invoke a defense to a claim for tortious interference with contract -- the "agent immunity" defense.

First, as to the third element, in some respects PenneCom's theory of the case is inconsistent with the notion that defendants induced Elektrim to breach the SPA. To the contrary, PenneCom contends that Elektrim decided that it did not want to go through with the transaction and enlisted defendants to find a way for Elektrim to get out of the deal. This smacks more of aiding and abetting a breach of contract than inducing a breach of contract. Nonetheless, the Second Amended Complaint suggests that defendants may have had a financial incentive for inducing Elektrim to breach the SPA (see Second Am. Compl. ¶¶ 4, 27), and I cannot say at this juncture that it appears "beyond doubt" that PenneCom will be unable to prove the claim.

Second, as to the agent immunity defense, New York law is clear that "[a]n agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he [or she] is acting on behalf of his principal and within the scope of his authority." Nu-Life Constr. Corp. v. Bd. of Educ., 611 N.Y.S.2d 529, 530 (1st Dep't 1994).

Although PenneCom now argues that an issue of fact exists as to whether defendants were the agents of Elektrim, the Second Amended Complaint alleges in substance that defendants were agents of Elektrim.[2] Yet the cases that discuss agent

---

[2] For example, the Second Amended Complaint alleges that defendants "served as investment bankers" to Elektrim. (Second Am. Compl. ¶ 1). PenneCom also alleges that Pittman was the "principal business representative" for Elektrim during the SPA negotiations in New York and that no Elektrim employees were present. (Id. ¶ 17).

immunity under New York law acknowledge an exception to immunity when agents commit independent tortious acts. See Solow, 994 F. Supp. 2d at 182 (citing Murtha v. Yonkers Child Care Ass'n, 45 N.Y.2d 913, 915 (1978)).  While the Second Amended Complaint does not explicitly allege that defendants committed independently tortious conduct, I cannot conclude that it is beyond doubt that PenneCom will be unable to prove facts to support this claim.

Defendants' motion to dismiss is denied as to the sixth claim.

### 3. Fraud

Under New York law, to prove fraud "'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damages as a result of such reliance.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 186-87 (2d Cir. 2004) (citation omitted); see also Desideri v. D.M.F.R. Group (USA) Co., 660 N.Y.S.2d 714, 716 (1st Dep't 1997) (five elements of a fraud cause of action are: (1) a material misrepresentation of fact, (2) made with knowledge of its falsity, (3) with the intent to deceive, (4) justifiable reliance, and (5) damages).  In cases in which the alleged fraudulent misrepresentation by the defendant was made to a third party rather than to the plaintiff directly, the plaintiff must allege "that he relied to his detriment on the defendant's misrepresentation and that the defendant intended the

misrepresentation to be conveyed to him."  Sec. Investor Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 71 (2d Cir. 2000).

Fed. R. Civ. P. 9(b) requires that fraud be pled with particularity; the plaintiff must "'(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'"  Id. at 187 (citation omitted).

The fraud claim fails.  First, the Second Amended Complaint does not meet the requirements of Rule 9(b).  It does not identify any specific statements or omissions that were fraudulent or when or where they were made.  It does not identify with any specificity any statements purportedly made to PenneCom -- directly by defendants or conveyed to PenneCom by Elektrim -- that fraudulently induced PenneCom to take any action.

Second, PenneCom's theory of the case is wholly inconsistent with a fraud cause of action.  PenneCom's theory is that Elektrim decided it did not want to go through with the transaction and enlisted defendants to come up with a basis for trying to get out of the deal.  In essence, PenneCom's fraud claim is that Pittman and Elektrim's former chief executive officer had conversations about getting "out of the contract" and subsequently Pittman advised Elektrim that it was not obligated to close under the SPA because the conditions for closing had not been met -- an intentionally false conclusion.  (Id. ¶¶ 25, 27). In support of the claim, PenneCom alleges that defendants -- in

particular Pittman -- made material false representations regarding, inter alia, the operation of Pilicka and the conditions for closing under the SPA. (Second Am. Compl. ¶¶ 24-25, 27). PenneCom alleges that defendants intended to defraud PenneCom with the misrepresentations. (Id. ¶¶ 27, 29, 67). PenneCom does not, and cannot, however, allege that any representations were made to it, by defendants either directly or through Elektrim, or that it relied on any such representations. To the contrary, the Second Amended Complaint alleges only that defendants made misrepresentations to Elektrim and that Elektrim relied on and used the misrepresentations to try to get out of the contract. (Id. ¶¶ 67-69). But under PenneCom's theory, Elektrim was working in complicity with defendants, and Elektrim surely was not defrauded by any of defendants' statements.

Most significantly, PenneCom does not allege that its damages were a result of reliance on defendants' misrepresentations or that it reasonably or justifiably relied on the misrepresentations. The Second Amended Complaint nowhere alleges that PenneCom relied on any statement or action of defendants or Elektrim. As a result, PenneCom fails to state a claim upon which relief can be granted.

PenneCom argues that it is not required to plead specific reliance on particular statements and that "[u]nder New York law, a defendant is liable in fraud to a seller where he provides a false report . . . to a buyer under circumstances where he knows that the likely effect of the false report will be

to cause the buyer to renege on the deal," citing <u>Goodman v. Title Guar. & Trust Co.</u>, 206 N.Y.S.2d 32, 33 (1st Dep't 1960), <u>Buchanan v. Graham</u>, 236 N.Y.S.2d 664 (Sup. Ct. 1962), and <u>Ultramares Corp. v. Touche</u>, 255 N.Y. 170, 179 (1931). (<u>See</u> Pl.'s Opp'n at 24-25). Those cases do not stand for the proposition that a plaintiff does not have to plead reliance. In <u>Goodman</u>, the court stated in dicta that a title company would be guilty of fraud if it issued a report, causing a buyer to rescind on a contract, with no knowledge of or genuine belief in its accuracy. 206 N.Y.S.2d at 33. The plaintiff in that case had brought a negligence claim, which was dismissed, and the court did not discuss reliance. The <u>Buchanan</u> court also dismissed a complaint against a title company, with leave to re-plead, stating in dicta that "if a recklessly false report caused and induced the buyers . . . to call off the deal . . . then there might be liability." 236 N.Y.S.2d at 666. Both cases cite <u>Ultramares</u>, which found that a plaintiff may state a claim for fraudulent misrepresentation made by a defendant to a third party in certain circumstances. 255 N.Y. at 179. In contrast to PenneCom's proposition, the Court of Appeals in <u>Ultramares</u> explained that "[a] representation even though knowingly false does not constitute ground for an action of deceit unless made with the intent to be communicated to the person or class of persons <u>who act upon it</u> to their prejudice." <u>Id.</u> at 187 (emphasis added). Thus <u>Ultramares</u> does acknowledge the element of reliance in a fraud action.

In sum, PenneCom's fraud claim must fail because there is no indication that PenneCom believed the allegedly false statements made by defendants or acted -- or failed to act -- on any such false statements. See Restatement (Second) of Torts § 548 cmt. a (1977) ("[T]he recipient of a misrepresentation must rely upon the truth of the misrepresentation itself, and his reliance upon its truth must be a substantial factor in inducing him to act or to refrain from action."). Even assuming, arguendo, that PenneCom suffered damage as a result of defendants' alleged deceitful conduct, it can prove no set of facts that would entitle it to relief on a claim for fraud. Accordingly, defendants' motion to dismiss is granted as to the seventh claim.[3]

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is denied in part and granted in part. The first, second, third, fourth, fifth, and seventh claims for relief are dismissed with prejudice. The parties shall appear for a pre-trial conference on September 9, 2005 at 10:30 a.m.

SO ORDERED.

Dated:   New York, New York
         August 24, 2005

                                    DENNY CHIN
                                    United States District Judge

---

[3] In their papers and subsequent letters, the parties debated whether the Court could properly consider on this motion a transcript of the arbitration proceedings. The Court did not consider the transcript in deciding the motion.

**APPEARANCES:**

Attorneys for Plaintiff:

       MILBERG WEISS BERSHAD & SCHULMAN LLP
           By: Melvyn I. Weiss, Esq.
               Rachel S. Fleishman, Esq.
       One Pennsylvania Plaza
       New York, New York 10119

       FIELDMAN HAY & ULLMAN, LLP
           By: Henry J. Fieldman, Esq.
               Anthony B. Ullman, Esq.
       152 West 57th Street, 34th Floor
       New York, New York 10019

Attorneys for Defendants
    Merrill Lynch & Co., Inc. and
    Merrill Lynch International, Inc.:

       MORGAN, LEWIS & BOCKIUS LLP
           By: Christopher P. Hall, Esq.
               Mark S. Mandel, Esq.
               Mark D. Knoll, Esq.
       101 Park Avenue
       New York, New York 10178

Attorneys for Defendant
    Paul A. Pittman:

       BINGHAM MCCUTCHEN LLP
           By: Mary Gail Gearns, Esq.
               Donald S. Davidson, Esq.
       399 Park Avenue
       New York, New York 10022